No. 13-2468

IN THE

# United States Court of Appeals for the Fourth Circuit

———————————

V. CASSEL ADAMSON, III,

Plaintiff-Appellant,

v.

COLUMBIA GAS TRANSMISSION, LLC,

Defendant-Appellee.

———————————

**On Appeal From the**
**United States District Court for the Eastern District of Virginia**
**in Case No. 3:13-cv-00214-HEH**

———————————

**BRIEF OF APPELLEE**

———————————

TRAVIS A. SABALEWSKI            TILLMAN J. BRECKENRIDGE
ALISON R.W. TOEPP               REED SMITH LLP
REED SMITH LLP                  1301 K Street, NW
901 East Byrd Street            Suite 1100, East Tower
Suite 1700                      Washington, D.C.  20005
Richmond, VA  23219             202-414-9200
804-344-3400                    tbreckenridge@reedsmith.com

MICHAEL S. DINGMAN
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4323

*Counsel for Appellee*

March 21, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2468__     Caption: _V. Cassel Adamson, III v. Columbia Gas Transmission, LLC_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Columbia Gas Transmission, LLC_____
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.     Does party/amicus have any parent corporations?                        ☑ YES ☐ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent
       corporations:
        Columbia Gas Transmission, LLC's sole member is Columbia Energy Group, Inc.  Columbia
        Energy Group is a wholly-owned subsidiary of NiSource, Inc.


3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                           ☑ YES ☐ NO
       If yes, identify all such owners:
        Columbia Gas Transmission, LLC's sole member is Columbia Energy Group, Inc.  Columbia
        Energy Group is a wholly-owned subsidiary of NiSource, Inc.  NiSource, Inc. is publicly-traded.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Tillman J. Breckenridge          Date:   December 18, 2013

Counsel for: Columbia Gas Transmission, LLC

## CERTIFICATE OF SERVICE
***************************

I certify that on   December 18, 2013   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

S. Sadiq Gill, Esquire
J. Buckley Warden IV, Esquire
Brittany J. Berlauk, Esquire
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Counsel for Adamson

/s/ Tillman J. Breckenridge                    December 18, 2013
      (signature)                                   (date)

- 2 -

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES ................................................................. 1

INTRODUCTION ................................................................................... 1

STATEMENT OF THE CASE .................................................................. 2

      A.   Columbia Enters Into 1956 Right Of Way Agreement To Install Gas Pipelines Through Property. ................................... 2

      B.   The Grantors Sell The Property And Record A Deed Depicting A 60-Foot-Wide Easement. ........................................ 4

      C.   Columbia Clears Trees And Other Growth From The 60-Foot-Wide Easement, And Adamson Sues. ............................... 5

      D.   Columbia's Unrebutted Expert Opines That A 60-Foot-Wide Clearing Of All Encroachments Always Was Required To Operate And Maintain The Pipelines. .................. 6

      E.   The District Court Grants Columbia's Motion For Summary Judgment. ................................................................ 8

SUMMARY OF ARGUMENT ................................................................ 9

ARGUMENT ........................................................................................ 12

   I.    UNDER ON-POINT VIRGINIA SUPREME COURT AND STATUTORY AUTHORITY, THE EASEMENT IS—AND ALWAYS HAS BEEN—60 FEET WIDE. ...................................... 12

      A.   Unrebutted Evidence Establishes That The Easement Must Be 60 Feet Wide To Serve Its Express Object. .............. 13

      B.   The Only Other Probative Evidence Of The Parties' Intent Establishes They Intended A 60-Foot-Wide Easement. ............................................................................ 19

      C.   The Virginia Circuit Court Decision In *Pounders* Does Not Override The District Court's Application Of Settled Virginia Law. ....................................................... 27

II.    THE AGREEMENT IS A VALID CONVEYANCE OF A
       PROPERTY RIGHT. ...........................................................31

       A.    Adamson Failed To Raise Certainty And The Rule
             Against Perpetuities In The District Court, Thus The
             Arguments Are Waived. ...........................................31

       B.    The Conveyance Is Sufficiently Certain Under Virginia
             Law...........................................................................34

       C.    The Conveyance Does Not Violate The Rule Against
             Perpetuities. ............................................................36

CONCLUSION .........................................................................39

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450 (2d Cir. 2007) ...........................................................................26

*American Arms Int'l v. Herbert*, 563 F.3d 78 (4th Cir. 2009) .................12

*Anderson v. Delore*, 278 Va. 251 (2009)..........................................14, 15

*Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618 (2008)....................24

*Atkins v. Bordman*, 2 Metcalf 457 (Mass. 1841) ....................................15

*Auerbach v. County of Hanover*, 252 Va. 410 (1996) .......................19, 20

*Bryant Elec. Co. v. City of Fredericksburg*, 762 F.2d 1192 (4th Cir. 1985)........................................................................28

*Buckles-Irvine Coal Co. v. Kennedy Coal Corp.*, 134 Va. 1 (1922) ...............passim

*Burdette v. Brush Mountain Estates*, 278 Va. 286 (2009)................................20, 21

*Cantrell v. Appalachian Power Co.*, 148 Va. 431 (1927) ........................8

*Citgo Petroleum Corp. v. Hopper*, 245 Va. 363 (1993) ..........................36

*City of Lynchburg v. Smith*, 166 Va. 364 (1936) ..................................36

*Columbia Gas Transmission Corp. v. Davis*, 33 F. Supp. 2d 640 (S.D. Ohio 1998)........................................................................16

*Columbia Gas Transmission Corp. v. Perry*, 623 F. Supp. 2d 409 (S.D.N.Y. 2008)....................................................................15

*Columbia Gas Transmission Corp. v. Savage*, 863 F. Supp. 198 (M.D. Pa. 1994)..................................................................16, 17

*Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013) .................................12

*Dream Palace v. County of Maricopa*, 384 F.3d 990 (9th Cir. 2004)....................33

*Fehlhaber v. Fehlhaber*, 681 F.2d 1015 (5th Cir. 1982) .........................32

*Firebaugh v. Whitehead*, 263 Va. 398 (2002) .......................................34

*Grossberg v. Travelers Indem. Co. of Am.*, 825 F. Supp. 2d 717 (E.D. Va. 2011) ....................................................................................28, 29

*Hamlin  v. Pandapas*, 197 Va. 659 (1956) .............................................13

*Handa v. Clark*, 401 F.3d 1129 (9th Cir. 2005)....................................33

*Harris v. Lukhard*, 733 F.2d 1075 (4th Cir. 1984) ...........................27, 28

*Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446 (4th Cir. 2004)..............26

*Holly Hill Farm Corp. v. U.S.*, 447 F.3d 258 (4th Cir. 2006) .................32

*JKC Holding Co. v. Wash. Sport Ventures, Inc.*, 264 F.3d 459 (4th Cir. 2001) ..............................................................................................12

*Kanai v. McHugh*, 638 F.3d 251 (4th Cir. 2011)....................................32

*King v. Norfolk and W. Ry. Co.*, 99 Va. 625 (1901) ................................24

*Painter v. Alexandria Water Co.*, 202 Va. 431 (1961) ...........................37

*Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va. 750 (2001) ..............14, 23

*Sheets v. Castle*, 263 Va. 407 (2002) .....................................................29

*Stephen Putney Shoe Co. v. Richmond, Fredericksburg and Potomac Ry. Co.*, 116 Va. 211 (1914)...........................................................35

*Texas Eastern Transmission v. Perano*, No. 04-3915, 2005 WL 289932 (E.D. Pa. Feb. 4, 2005) .................................................................16

*Thomas v. Bryant*, 185 Va. 845 (1946)...................................................37

*Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365 (4th Cir. 2005) .......................................................27

*U.S. v. Richards*, 646 F.2d 962 (5th Cir. 1981) .....................................32

*Waskey v. Lewis*, 224 Va. 206 (1982)....................................................13

## Statute

Virginia Code § 8.01-389 ...................................................... 19, 20, 30

## STATEMENT OF THE ISSUES

1.  Whether summary judgment is appropriate when (1) Virginia law requires the dimensions of an easement to be construed as the dimensions necessary to meet the object of the easement stated in the conveyance, and (2) only one party presented competent evidence on the dimensions reasonably required to meet the easement's object.

2.  Whether—if extrinsic evidence were allowably used to determine the parties' intent—Adamson's evidence of his neighbor's estimate as to the clearing in 1991 or 1992 raised a material issue of fact in light of the plain documentary evidence of a 1969 deed signed by the original grantor incorporating a plat that identified a 60-foot-wide easement and subsequent deeds also identifying a 60-foot-wide easement.

## INTRODUCTION

This case is about whether Columbia has a 60-foot-wide easement or a 40-foot-wide easement. And Virginia law is straight-forward: when a conveyance of an easement does not state its dimensions but states the easement's object, the easement's dimensions will be whatever is reasonably necessary to meet the object of the easement. Columbia presented a qualified expert on what width was necessary to serve the object of the easement in 1956 and now. Adamson presented no evidence on what was needed to serve the object of the easement.

To make an appearance of a material issue of fact, Adamson attempts to turn this case into a discussion on whether "physical expansion" of the easement is allowed. This was not the basis for the district court's decision. And Adamson fails to squarely address the fundamental issue here—the easement is, and always was 60 feet wide. The conveyance establishes that and the subsequent deeds—

including one signed by the original easement grantor—establish that. Additionally, Adamson's "evidence," consisting of his neighbor's impression of how wide the cleared area was in 1992, along with his neighbor's purported contemporary photos, is not competent to generate a genuine issue of material fact otherwise.

Moreover, the district court is correct in its alternative suggestion that even if the easement had not been 60 feet wide at inception, the conveyance expressly provides Columbia a right to lay additional pipelines roughly parallel to the first, which, of course, would require expanding the easement. That right vested immediately upon the execution of the conveyance, and it is thus neither barred by the rule against perpetuities nor insufficiently certain. In any event, Adamson waived these arguments by failing to raise them in the district court.

The plain documentary evidence here, along with unrebutted expert testimony, was certainly enough to meet Columbia's burden for summary judgment. Adamson did not raise even a scintilla of competent evidence in response. Thus, the district court's decision should be affirmed.

## STATEMENT OF THE CASE

### A.    Columbia Enters Into 1956 Right Of Way Agreement To Install Gas Pipelines Through Property.

Columbia is a natural gas transmission company with over 11,000 miles of pipeline, and it is one of the primary natural gas suppliers to the Tidewater region

of Virginia.  Columbia transmits natural gas to Tidewater primarily by two high pressure transmission pipelines.  JA284.  The pipelines were installed and operate through certain property located in Goochland County, Virginia, in an easement created under a recorded 1956 Right of Way Agreement (the "Conveyance").  JA284-85.  The Conveyance was entered between Frederick Bennett McBride and Penelope A. McBride (the "Grantors") and Commonwealth Natural Gas Corporation (the "Grantee").  JA285.

The Conveyance granted the "the right to la[y], maintain, operate and remove a pipe line or pipe lines for the transportation of gas . . . with the right of ingress and egress to and from same."  *Id.*  The Conveyance provides to the Grantee "the right at any time to lay additional lines of pipe approximately parallel to the first line herein provided, upon the payment of the price mentioned for each additional line to be laid."  JA285-86.  The Grantor's right to "fully use and enjoy the premises" is made expressly "subject to the rights of the Grantee to operate and maintain said line or lines."  JA246.  Columbia, as the successor in interest to the Grantee, currently operates and maintains the pipelines running through the easement.  JA284.  One pipeline is 18" in diameter and was installed in 1957; the other, 24" in diameter and installed in 1992, and each of the pipelines have been maintained and operated since installation.  JA286.

- 3 -

**B.    The Grantors Sell The Property And Record A Deed Depicting A 60-Foot-Wide Easement.**

The Conveyance did not specify the width or location of the easement, but subsequent land records depict the easement as 60 feet wide running along the property's eastern boundary. JA286-87, 237, 244, 251-57. In 1969, the Grantors conveyed the entire property to the Partridge Hill Company by a recorded deed, which references a recorded plat. JA286. The plat identifies the easement created under the Conveyance as the "Commonwealth Natural Gas R. of W. (60' Wide)" and locates it along the eastern border. JA252-55.

Adamson acquired certain adjacent portions of the property made subject to the Conveyance through two deeds that were recorded in the land records for Goochland County. JA287. The 2005 deed conveyed a 3.631 acre portion "subject, however, to applicable easements conditions, restrictions and agreements of record." JA234-37. A plat attached to the 2005 Deed depicts a "60.0' COMMONWEALTH NATURAL GAS LINE RIGHT-OF-WAY" along the eastern border of Adamson's property. JA237. In 2007, Adamson acquired an adjoining parcel of 0.278 acres by a second deed. JA238-40. Adamson acquired the property under the 2007 deed "subject to any and all conditions, restrictions and easements of record applicable to the Adamson Lot." *Id*. The plat attached to the 2007 deed depicts the continuation of the "60' COMMONWEALTH NATURAL GAS LINE RIGHT-OF-WAY" along the eastern border. JA245.

- 4 -

Based on the acquisition of these portions of the property subject to the Conveyance, Adamson is a successor in interest to the Grantors.

The location of the pipelines in the easement through Adamson's property is depicted in a survey, JA256, and also in a drawing prepared by Columbia personnel, JA257.  It is undisputed that the 1992 pipeline is more than 40 feet from the eastern boundary at certain locations.

### C.    Columbia Clears Trees And Other Growth From The 60-Foot-Wide Easement, And Adamson Sues.

Beginning in 2007, Columbia repeatedly gave Adamson notice that it intended to remove trees and other growth—encroachments—from the easement. JA287-88, 258-60.  Columbia's position that the easement was 60 feet wide was based on the conclusion of Columbia's Operations Manager that Columbia needed 60 feet to operate and maintain the pipelines.  JA89-91; *see also* JA293.  Adamson contended that the easement was less than 60 feet wide.  On or about September 14, 2009, Columbia removed the encroachments.  JA288.

Adamson sued Columbia in the Circuit Court for Goochland County, Virginia, seeking relief for trespass damages and a punitive damages award. Adamson claimed that the easement begins at the eastern boundary of the property and extends westward 40 feet, JA13, and that Columbia trespassed in 2009, when it cleared the easement 60 feet westward of the eastern boundary, JA288. Columbia removed the case to the United States District Court for the Eastern

District of Virginia and asserted a Counterclaim seeking a declaratory judgment that (1) the easement created under the Agreement is 60 feet wide; and (2) Columbia has the right to keep it free from encroachments that interfere with the operation and maintenance of the pipelines. JA20-25. The Pipeline Expert opined that anything short of clearing the full 60 feet would require actions that are too time consuming in an emergency. JA294.

### D. Columbia's Unrebutted Expert Opines That A 60-Foot-Wide Clearing Of All Encroachments Always Was Required To Operate And Maintain The Pipelines.

Columbia designated a pipeline engineer as an expert ("Pipeline Expert"), who opined that the safe maintenance and operation of each pipeline always required a 60 feet wide clearing to safely access either pipeline for inspection, maintenance, repair or replacement. JA293. The Pipeline Expert stated that a 60 foot width was always needed to access even one Pipeline based on the space needed for a large enough trench to enable a person to safely perform the repairs while in the trench, the resulting spoil pile from creating the trench, the equipment to create the trench, and a bypass line to avoid interruption of gas service during a repair. JA29. According to the expert, "[i]n the event of an emergency to access [the 1992 pipeline], there is no time for testing and delay," and Columbia would have to dig an open trench "approximately 22.58 feet wide at the top." *Id*. Additionally, space would be needed for spoil, bypass piping, equipment

passageways and other purposes. JA30. Thus, at least a 60-foot-wide easement is necessary to maintain the line. *Id.* And under the same considerations, a 60-foot-wide easement is, and always was, necessary to maintain the 1957 pipeline. JA32.

The Pipeline Expert further opined that to safely maintain and operate the pipelines always required the easement to be cleared of all encroachments. He opined that "[e]ncroachments such as trees, fences and other structures interfere with the required maintenance and inspections of the pipelines, including surveillance activities such as Facility Patrols (aircraft or walk) and Leakage Patrols with an instrument." JA32. They also impede access to the pipelines and delay completion of the repairs by requiring more planning and delivery of more equipment to the repair site for the purpose of removing encroachments. JA33-35; *see also* JA168-69. Moreover, the Pipeline Expert opined that roots of trees can scrape the protective coating off of the pipe and also interfere with systems that protect against rust and other weakening of the Pipelines. JA35. And a 60-foot-wide easement cleared of encroachments was needed to comply with federal regulations. JA293. In short, the expert stated that "[e]ncroachments constitute an unreasonable interference that hinders Columbia's ability to properly inspect, maintain, and repair the pipelines. This has always been true." JA33. Adamson did not designate an expert to rebut any of the Pipeline Expert's opinions.

**E.    The District Court Grants Columbia's Motion For Summary Judgment.**

Columbia and Adamson each filed motions for summary judgment as to all claims.  JA284-85.  The main legal issue in the motions concerned the proper test for determining the width of an easement created under an agreement that did not specify the width.  JA290.  The district court issued a Memorandum Opinion and Final Order on November 13, 2013.  Citing several opinions of the Supreme Court of Virginia, the district court determined that, under Virginia law, when a conveyance instrument does not state the dimensions of an easement, courts look to the plain language of the conveyance, and if there is an expressly stated purpose, the easement must be construed to the width necessary to meet that purpose.  JA290-91.  On this issue, the district court weighed the unrebutted opinions of the Pipeline Expert that "a sixty foot width had always been required" against Adamson's failure to present any evidence on the necessary width of the easement.  JA293-94.

The district court rejected Adamson's central argument that the width of the easement depends on applying extrinsic evidence of "the original intent of the parties to the" Conveyance because "Virginia courts typically look to the intent of the parties only when the easement lacks language specifying its purpose."  JA291 (citing *Cantrell v. Appalachian Power Co.* 148 Va. 431, 435(1927)).  The court noted that, in any event, the only extrinsic evidence of the intent of the original

- 8 -

parties to the easement is the 1969 "deed of conveyance from the [Grantors] to

Partridge Hill [and] [t]he attached plat clearly depicts a sixty foot easement."

JA291.  By contrast, "Adamson ha[d] offered no probative evidence of the original

1957 clearing and only scant, somewhat impressionistic, evidence of the extent of

the 1992 taking."  JA295.

The district court concluded that "an easement of sixty feet comports with

industry standards, complies with federal regulations, and is reasonably necessary

to safely maintain and service two high pressure natural gas pipelines."  JA296.  It

further concluded based on the Pipeline Expert's opinions that, "Columbia was

entitled to remove encroachments in the easement to safeguard the pipeline[s]."

*Id*.  The district court concluded that Columbia's activities in the 60-foot-wide

easement did not constitute a trespass, granted Columbia's motion for summary

judgment, and denied Adamson's motion.  *Id*.  On December 2, 2013, the district

court entered a declaratory judgment confirming the decision that the easement is

60 feet wide and that Columbia and its successors in interest have the right "to

remove all encroachments that interfere with the rights of the grantee."  JA299-

300.

## SUMMARY OF ARGUMENT

Settled Virginia law—adopted by the Supreme Court of Virginia in 1922

and applied there again and again as recently as 2009—establishes that when an

- 9 -

easement conveyance instrument does not state the dimensions of the easement but expressly states the object of the easement, the easement will be of whatever dimensions reasonably serve the object of the easement. Here, the Conveyance has an express statement of the easement's object, and Columbia put on unrebutted expert testimony establishing that the easement must be at least 60 feet wide to reasonably serve its object.

Adamson quibbles with the strength of the expert testimony, but he did not provide any counter-evidence. Rather, he took issue with Virginia law by presenting a false dichotomy to the district court and now to this Court. Adamson claims that the original parties' intent, as determined through extrinsic evidence, is the primary method of determining the width of the easement. This reasoning suffers from two major flaws.

First, pitting (1) meeting the object of the easement against (2) the intent of the original parties misses the point that an express statement of the object of the easement in the conveyance expresses the parties' intent. And given the object is expressly stated in the Conveyance, the object is better evidence of intent than extrinsic evidence. The Massachusetts case on which the Supreme Court of Virginia relied to first adopt the "object of the easement" rule expressly recognized that.

Second, this case is a perfect example of *why* serving the express object of the easement is the best way to determine and effectuate the parties' intent. The only available direct extrinsic evidence of the original parties' intent is that when the Grantors eventually sold the land through which the easement runs in 1969, they signed a deed referencing a survey depicting a 60-foot-wide easement. Adamson inexplicably claims that direct documentary evidence is irrelevant. Instead, he claims, the Court should rely on his neighbor's lay impression of about how wide the cleared area for the pipelines was around 1992—over 35 years after the easement was conveyed. That is flat wrong for two reasons. First, under Virginia law, the cleared area does not establish the boundaries of the easement. Second, even if cleared area were normally a proxy for the parties' intent, this 35-years-post guess at about how wide a path is cut is so unreliable, it would make no sense to elevate it above the intent of the parties expressed in the Conveyance. Thus, the path to determining the dimensions of the easement runs through determining what is needed to serve the object of the easement. Columbia's unrebutted evidence on that issue rendered summary judgment appropriate.

Adamson's other arguments fare no better. Adamson waived reliance on principles of certainty and the rule against perpetuities by failing to argue them in the district court. In any event, both arguments fail on the merits. Adamson's own cases establish that the conveyance here was sufficiently certain, and the Grantee's

interests under the Conveyance vested immediately, thereby rendering the rule against perpetuities inapplicable. The district court applied settled Virginia law to undisputed facts and found summary judgment appropriate. That determination was not error, and the decision should be affirmed.

## ARGUMENT

### I.    UNDER ON-POINT VIRGINIA SUPREME COURT AND STATUTORY AUTHORITY, THE EASEMENT IS—AND ALWAYS HAS BEEN—60 FEET WIDE.

The Court reviews a grant of summary judgment *de novo*. *Dash v. Mayweather*, 731 F.3d 303, 310 (4th Cir. 2013). "[O]nce the movant has satisfied [the] 'initial burden' of demonstrating the absence of a genuine dispute as to any material fact, the nonmoving party must show that a genuine dispute does, in fact, exist." *Id.* at 311. "[A] nonmovant cannot defeat summary judgment with merely a scintilla of evidence." *American Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). Rather, the nonmovant "'must 'set forth specific facts showing that there is a genuine issue for trial.'"" *Dash*, 731 F.3d at 311 (citation omitted). And a genuine issue of material fact only exists when a reasonable jury can return a verdict in the nonmovant's favor when the facts are viewed in the light most favorable to the nonmovant. *JKC Holding Co. v. Wash. Sport Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

Adamson came forward with no evidence to rebut the Pipeline Expert's opinion that a minimum 60-foot-wide easement is, and always was required to maintain either or both of the pipelines. And even if extrinsic evidence of intent were appropriate to consider over the plain language of the conveyance instrument, Adamson offered no evidence of the original parties' intent, and no more than a mere scintilla of evidence of the successors' irrelevant beliefs on the width of the easement in 1992.

## A. Unrebutted Evidence Establishes That The Easement Must Be 60 Feet Wide To Serve Its Express Object.

The Supreme Court of Virginia has delineated an express hierarchy of proof that establishes the dimensions of an easement. A right of way agreement is construed as any other written document. *Hamlin v. Pandapas*, 197 Va. 659, 663 (1956). The words of the written conveyance prevail over any other evidence that might construe "the extent of the easement." *Id.* at 663-64. But when the written conveyance does not expressly state the dimensions of the easement, the court next turns to any statement of the object of the easement. *Waskey v. Lewis*, 224 Va. 206, 211 (1982) ("If the object of the right of way is expressed, then the dimensions of the way are such as to be 'reasonably sufficient for the accomplishment of that object.'" (citation omitted)). The Supreme Court of Virginia first adopted this rule in 1922 in *Buckles-Irvine Coal Co. v. Kennedy Coal Corp.*, 134 Va. 1, 18 (1922). And it has repeatedly applied the rule. The court

- 13 -

most recently reiterated that the object of the easement controls in the absence of express stated dimensions in the instrument in 2009. *Anderson v. Delore*, 278 Va. 251, 257 (2009).

In *Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va. 750, 752 (2001), the Supreme Court of Virginia construed an easement agreement allowing use of railroad spur tracks. The rail service along the tracks had discontinued at least 20 years prior to the disagreement, but "[b]eginning before the rail service was discontinued and continuing to [the time of the litigation], the property was used by motor vehicles for deliveries and for parking by the occupants of" the grantee's successor's building. *Id.* at 752-53. At trial the grantee's successor proved that it had historically used the property to load and unload trucks. *Id.* at 753. The trial court thus found the easement to be still valid and granted right of way access to the original grantee's successor. *Id.*

The Supreme Court of Virginia reversed. *Id.* at 755-56. The court ruled that the deed in question unambiguously stated that the object of the easement "was expressly limited to allowing access to the spur tracks and sidings, and nothing more." *Id.* at 755. Thus, the trial court erred by admitting parol evidence of the easement's historical use, and the scope of the easement was governed by the express object stated in the deed. *Id.* at 755-56.

- 14 -

Adamson quibbles with *Anderson*'s applicability based on factual distinctions without a difference and a claim that *Anderson*'s discussion of Virginia law on easement dimensions is dictum. AOB 33-34. Ultimately, *Anderson* simply restates a settled rule of Virginia law. That rule is plainly applicable here, and the court need not look further than unrebutted evidence of the easement width necessary to serve the object of the easement.

Adamson suggests that there is tension between this settled standard and the fact that when an agreement is unclear, the intent of the parties governs. AOB 30-31. No such tension exists because the doctrine originates from the concept that construing the easement to be the width necessary to serve the easement's object applies the best evidence of the parties' intent. *Atkins v. Bordman*, 2 Metcalf 457, 467-68 (Mass. 1841), *accord*, *Buckles*, 134 Va. at 18. Thus, Adamson's assertion that the parties' intent should be considered before serving the object of the easement is a *non-sequitur*. Looking to the easement's express object is *how* the court determines the parties' intent. And courts resort to other extrinsic evidence of intent only when the conveyance does not state an object of the easement. *Anderson*, 278 Va. at 257.

Federal district courts have construed similar state laws this way in disputes over right of way agreements for gas pipelines. *Columbia Gas Transmission Corp. v. Perry*, 623 F. Supp. 2d 409, 413 (S.D.N.Y. 2008) (where a right of way

- 15 -

agreement is silent as to the width of the easement, the determination is based on

"what is 'necessary for the purpose for which [the easement] was created.'");

*Texas Eastern Transmission v. Perano*, No. 04-3915, 2005 WL 289932 at *6 (E.D.

Pa. Feb. 4, 2005) (applying a "reasonable and necessary use standard" to right of

way agreement that expressed purposes for easement but not easement width);

*Columbia Gas Transmission Corp. v. Davis*, 33 F. Supp. 2d 640, 643 (S.D. Ohio

1998) ("[I]n the absence of [a precise description of the dimensions and metes and

bounds of the easement], the Court must define the scope of the easement by what

is reasonably necessary to accomplish the purpose of the grant."); *Columbia Gas*

*Transmission Corp. v. Savage*, 863 F. Supp. 198, 202 (M.D. Pa. 1994) (holding

that where agreement expressed purposes for which easement was granted but did

not specify the width, plaintiff was entitled to the width needed to safely perform

the objects of its easement, i.e., to "operate, repair, maintain and remove" its

pipeline).

Here, the instrument granting the easement does not specify the easement's

width, but it undisputedly states the express object of the easement.  The

easement's object is to provide Columbia (through its predecessors) "the right to

lay, maintain, operate and remove a pipe line or pipe lines for the transportation of

gas, oil, petroleum products, or any other liquids, gases or substances which can be

transported through a pipe line."  JA246.  The Conveyance further states a "right of

ingress and egress to and from and through same." *Id.* And "[t]he Grantee is further granted the right at any time to lay additional lines of pipe approximately parallel to the first line herein provided, upon the payment of the price mentioned for each additional line to be laid." *Id.*

Columbia presented expert testimony regarding the fact that a 60-foot-wide easement is required to serve the object of the easement. The Pipeline Expert is "an engineer with thirty years of experience working in the natural gas transmission industry." JA293. He "stated that in his expert opinion, a sixty foot easement was necessary to fulfill the object of the easement." JA293; 29-32, 36. That width is "necessary not only to safely access the pipelines for inspection, maintenance, repair or replacement, but to comply with federal regulations." JA293. Further, Columbia's expert "stated unequivocally that based on his training and thirty years of experience, a sixty foot width had always been required." JA 293-94; *see also* JA32. Thus, Columbia provided competent evidence that the width necessary to achieve the object of the easement is, and always was, 60 feet.[1]

_____

[1] Indeed, the decision Adamson argues deserves great weight is in accord. AOB 15 ("the *Pounders* court found Columbia's evidence of a need for sixty feet was persuasive, yet irrelevant under Virginia law.").

Adamson offered no expert to rebut that evidence.  Adamson only challenges Columbia's expert based on (1) the adequacy of his knowledge, and (2) the fact that he had not prepared an opinion on the need for sixty feet of clearing until litigation began.  But to the extent Adamson considers the evidence weak, such that his doubt as to Columbia's expert's credibility should have been presented to a jury, *see* AOB 19-20 (arguing only that Adamson's "doubt" "created an issue of material fact for the fact-finder to decide"), Adamson should have presented some evidence—such as his own expert—stating that 60 feet was not necessary to achieve the object of the easement.  He did not, perhaps because that would not have been true.

In any event, Adamson's concern about the weight of Columbia's expert's testimony is misplaced, and arguments about when the Pipeline Expert formed his opinion, what standards he relied on, and whether alternative measures are available are irrelevant.  Moreover, the district court considered and rightly rejected these arguments on their merits.  JA293-94.  The Pipeline Expert was competent, and when weighed against the absence of evidence provided by Adamson, his opinion is dispositive.  The district court did not err by relying on the thirty years of experience Columbia's expert has weighed against no evidence on the other side.

- 18 -

**B.    The Only Other Probative Evidence Of The Parties' Intent Establishes They Intended A 60-Foot-Wide Easement.**

If the object of the easement is not expressly stated, Virginia courts look to extrinsic evidence of the parties' intent.  By statute, Columbia has presented *prima facie* evidence that (1) the original parties intended to convey a 60-foot-wide easement to Columbia's predecessor, and (2) Adamson bought a parcel with a 60-foot-wide easement.  Adamson has not even offered a scintilla of competent evidence to rebut that.  So, even if the Supreme Court of Virginia had adopted Adamson's view that extrinsic evidence of the parties' intent outweighs the intent expressed in the grant instrument's plain language, Adamson's claims would still fail.

Under Virginia Code § 8.01-389(C), "recitals of any fact in a deed or deed of trust of record conveying any interest in real property shall be prima facie evidence of that fact."  And "where a deed incorporates a plat by reference, that plat must be considered part of the instrument itself."  *Auerbach v. County of Hanover*, 252 Va. 410, 414 (1996) (internal citation and quotation marks omitted).

While the original deed does not establish the boundaries of the easement, all subsequent deeds, including one signed by the original grantor, state that there is a 60-foot-wide easement on the property.  The original Grantors of the easement conveyed the subject property to the Partridge Hill Company in 1969.  JA247-51; *see also* JA252-54.  That deed referred to an attached plat.  JA247.  And that plat

- 19 -

plainly shows a 60-foot-wide right of way.  Similarly, when Adamson bought his two parcels of land at issue here in 2005 and 2007, JA234-37 & 238-45, each deed attached and incorporated plats depicting a 60-foot-wide right of way, JA 237, 245.

In any event, even if § 8.01-389(C) were not dispositive of the issue, the original Grantors' deed and plat stand as the *only* extrinsic evidence of the original Grantors' intent.  Thus, under Adamson's theory of the case that the Court should put the written instrument aside and focus solely on extrinsic evidence, summary judgment is still proper.

Adamson does not dispute that the deeds are valid, he does not dispute that the attached plats depict a 60-foot-wide easement in 1969, 2005, and 2007; he does not dispute that the 1969 deed is signed by the Grantors of the subject easement.  At the district court, Adamson only claimed that these 60-foot-wide easements were the result of a "scrivener's error."  JA287.  He did not present any evidence to support this speculation, nor did he have any explanation as to why the original Grantors signed a deed with this error.  *Id.*  The district court unsurprisingly rejected Adamson's rebuttal outright.  *Id.*

Here, Adamson appears to suggest that the deeds are irrelevant, citing *Burdette v. Brush Mountain Estates*, 278 Va. 286 (2009).  AOB 47.  *Burdette* is plainly inapposite.  As Adamson recognizes in his brief, *Burdette* involved a claim that a plat proved the *creation* of an easement.  AOB 47-48.  And as *Burdette*

plainly states: "the plat is considered part of the deed itself but only for descriptive purposes to establish the metes and bounds of the property being conveyed." *Burdette*, 278 Va. at 298. Given the fact that the primary issue in this case is the metes and bounds of the easement conveyed, *Burdette* further establishes that the three plats depicting a 60-foot-wide easement constitute *prima facie* evidence that the original Grantors intended to convey a 60-foot-wide easement and Adamson knowingly bought land that was encumbered by a 60-foot-wide easement—twice.

Adamson has presented no evidence of the original Grantors' intent. Nor has he presented any reason to disregard the fact that he clearly intended to buy two parcels of land that were encumbered by a 60-foot-wide easement. He first asked this Court to ignore the plain language of the instrument originally granting the right of way, and now he asks the Court to cast aside the only other documentary evidence of the easement's width.

According to Adamson, instead of relying on the panoply of signed documents establishing that the easement is 60 feet wide, the Court should credit his neighbor's impression that the cleared area was 40 feet wide in 1992. AOB 25. That, of course, does not create a triable issue of fact against the clear documentary evidence. Adamson's "historical clearing" evidence is not probative for at least two reasons—it lacks foundation and fails to establish a 40 feet historical clearing;

and it is irrelevant because it could only prove how much land was cleared—not the width of the easement conveyed.

Adamson misrepresents the record by asserting that only 40 feet had been cleared from the date the right of way was granted in 1956. AOB 24. His only purported evidence is his neighbor's guess as to how large the cleared path was when he bought his property in 1991 and when the 1992 pipeline was installed— over 35 years after the Conveyance—along with some photographs contemporaneous to that 1992 impression. JA44-62. That is far from being "prepared to testify that he could identify the area originally cleared." AOB 25. In any event, there is no foundation for the neighbor's opinion. He is not an expert and does not purport to have measured the width of the cleared area on Adamson's property. *See, e.g.,* JA53. At bottom, Adamson's "evidence" is simply a layperson's guesstimate of the size of the cleared area.

Adamson also points to an unauthenticated construction map involved in laying the 1992 pipeline with a hearsay notation stating that Columbia would keep the 1992 pipeline within the existing right of way but does not state anywhere on the map what the dimensions of the right of way are. AOB 25 (citing JA63-65). There is no evidence of who made the notation or even who made the map. In any event, the notation suggests that the easement was 60 feet wide and not 40 feet wide as Adamson contends. *See* JA13 ("These boundaries were clearly defined

and established the Easement the parties intended to create as 40 feet until the recent destruction of trees by Columbia."). The record plainly establishes that the 1992 pipeline was ultimately laid, in places, more than 40 feet from the property boundary—outside of the boundary Adamson claims for the easement. JA257 (depicting the 1992 pipeline as between 42 and 44 feet from the property edge for a stretch). The *only* way for the statement on the construction map to be true between the two parties' assertions of the easement's width is to construe the easement as 60 feet wide. In that case, the 1992 pipeline was actually laid within the existing right of way.

Similarly, taking the evidence in the light most favorable to Adamson, Adamson's claim that one Columbia employee told a contractor the easement was expanded from 40 feet wide to 60 feet wide at some point, JA294, is not probative because it still is evidence that the easement is 60 feet wide. Neither the construction map nor the purported statement of the Columbia employee is competent evidence that the easement is 40 feet wide, and all that remains against the probative documentary evidence is his neighbor's best guess at what he saw in 1992.

Even assuming only 40 feet had been cleared historically, that history would not limit the width of the easement. The Supreme Court of Virginia rejected historical use evidence in favor of applying the object of the easement in *Pyramid*,

262 Va. at 754.  And in *King v. Norfolk and W. Ry. Co.*, 99 Va. 625 (1901), the court construed an agreement that allowed a railroad to use certain land to mean that failure to use land conveyed did not constitute a forfeiture.

Here, Columbia did not forfeit the full scope of its easement by purportedly failing to use a strip of it for a period of time.  Nor does the cleared area establish how wide the easement was intended to be.  Just as in *King*, the grantee had the right to clear the entire easement or not clear it as the grantee saw fit.  Thus, if Adamson is correct that Columbia and its predecessors only cleared 40 feet of space since 1956, despite the indisputable evidence stating otherwise, that only proves that Columbia failed to clear the necessary amount of land.  It does not mean that Columbia intended to limit its rights, and it certainly does not mean that the original grantors somehow forced Columbia to only clear 40 feet, when there is no document or testimony even suggesting that.

Nor does a 40-foot clearing mean that Columbia can safely maintain the pipelines with only a 40-foot-wide right of way.  Particularly because a stretch of one pipeline falls outside of that zone and space is needed to be able to dig around the pipe buried more than three feet deep, JA257, it is preposterous to even suggest that.  It only means that—if only 40 feet of space historically was cleared— Columbia was fortunate that no leaks or emergencies occurred on that stretch of pipeline.  In light of the strong public interest in pipeline safety, *see Andrews v.*

*Columbia Gas Transmission Corp.*, 544 F.3d 618, 629 (2008) (construing easement to allow clearing of encumbrances), the district court properly ruled that Columbia is entitled to maintain a 60-foot-wide easement area consistent with expert opinion. The pipelines must be safely maintained to prevent and repair leaks and otherwise prevent explosions.

Ultimately, the undisputable evidence establishes that the easement was cleared at greater than 40 feet of width, and this discussion about the value of the historical evidence is hypothetical. The locations of the pipelines prove that Columbia has maintained more than a 40-foot width on the easement, and good fortune was not, in fact, required to perform emergency repairs on the portion of the pipelines on Adamson's property for the past 58 years without incident.

Adamson effectively sums up his "evidence" that the easement is 40 feet wide at AOB 26. He offers three different ways of basically saying "my neighbor thinks it's 40 feet wide" and then otherwise relies on an inadmissible "construction map" that suggests the easement is *more* than 40 feet wide, an "admission" that says the easement is 60 feet wide, and the existence of purportedly "unsupported" opinions by Columbia's expert that say the easement is 60 feet wide.[2] This is no

---

[2] In a footnote, Adamson argues that the district court erred by denying his motion for an adverse inference based on alleged spoliation of evidence. AOB 43 n.8. Adamson did not file his motion until three years after litigation began, JA217-18.

Continued on following page

better than the evidence offered in *Anderson*, and so Adamson's attempt to

distinguish *Anderson* by claiming "the parties presented no evidence as to prior

grantor-grantee intent or historical prior use or non-use" could equally be said here.

Adamson has offered *no* evidence of the original Grantors' or Grantee's intent.

Adamson's scant "evidence" does not even amount to a scintilla, and it does

not support Adamson's request that this Court reverse summary judgment when *all*

documentary evidence—from the original Conveyance in 1956 to the 1969 deed to

_____

Continued from previous page

No spoliation motion could have been granted because the destroyed tree stumps
were not relevant evidence. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450
(4th Cir. 2004) (adverse inference movant must show that the adverse party "knew
the evidence was relevant"). The stumps could not have proven the dimensions of
the easement agreed to—the Conveyance does that. *See infra*, at pp. 13-18. And
even if they had been relevant, there is no evidence Columbia knew they were
relevant. To the contrary, at the time the subject tree stumps were ground up—in
2009—Adamson, who was represented by counsel, was on notice that Columbia
intended to grind the stumps but did not object. JA259 (letter to Adamson's
counsel dated Nov. 4, 2008, stating that "…after removing the encroachments,
Columbia [will] grind any stumps, plant grass seed, and place straw over the
seed…"). He and his attorney had every opportunity to notify Columbia that he
thought the tree stumps were relevant. Adamson cannot now claim spoliation
when, given proper opportunity to object to the destruction of the purported
"evidence," he failed to do so. *See Allstate Ins. Co. v. Hamilton Beach/Proctor
Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) (where the movant on a spoliation
motion did not request preservation of the allegedly spoliated evidence and the
movant already had a "full opportunity to inspect" that evidence, it was an abuse of
discretion for the trial court to grant the spoliation motion).

- 26 -

the 2005 and 2007 deeds—establish that the easement is 60 feet wide.  The district court did not err in ruling that the easement is, and always has been, 60 feet wide.

### C. The Virginia Circuit Court Decision In *Pounders* Does Not Override The District Court's Application Of Settled Virginia Law.

The district court gave proper consideration to an unpublished Virginia Circuit Court decision on similar subject matter.  It is well-settled that "a federal court sitting in diversity is not bound by a state trial court's decision on matters of state law."  *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 370 (4th Cir. 2005) (refusing to apply decision from South Carolina trial court).  The court sitting in diversity should give some consideration to a lower court's determination of an issue of state law when the state's court of last resort has not opined on the issue.  *Harris v. Lukhard*, 733 F.2d 1075, 1082 (4th Cir. 1984) (ruling that a consensus of four Virginia Circuit Courts on an issue of state law was entitled to some, but not binding, deference).

Here, a single, unpublished decision of a Virginia Circuit Court ruled that evidence of historical use was persuasive over the width necessary to reasonably meet the object of the easement.  The district court expressly gave due consideration to this decision.  JA295.  It noted, though, that the case involved "different parties, tracts of land and a divergent analytical approach."  *Id*.  Notably, the pipelines on Pounders' property do not pass outside of the asserted 40-foot-

wide easement.  JA256-57.  But more importantly, the court's "divergent analytical approach" apparently eschewed on-point precedent from the Supreme Court of Virginia that plainly states a court must adhere to the language of the instrument granting the right of way over extrinsic evidence of intent.  As Adamson puts it, "the *Pounders* court found Columbia's evidence of a need for sixty feet was persuasive, yet irrelevant under Virginia law."  AOB 15.  In light of the circuit court's departure from binding Supreme Court of Virginia precedent, and the fact that *Pounders* is not binding on the district court, the district court correctly considered but rejected it.

Adamson rightly did not make any *res judicata* argument at the district court, and does not make such an argument here.  Rather, Adamson cites cases from this Court in which the Court confronted a consensus of many lower court decisions, and even then only stated that the consensus decisions deserved some deference but were not binding.  *See* AOB 13, citing *Bryant Elec. Co. v. City of Fredericksburg*, 762 F.2d 1192, 1194 (4th Cir. 1985) and *Harris*, 733 F.2d at 1082.  Adamson's reliance on *Grossberg v. Travelers Indem. Co. of Am.*, 825 F. Supp. 2d 717, 723 (E.D. Va. 2011) is similarly misplaced.  There, the district court sought to determine how the Supreme Court of Virginia might rule on an issue involving a split of authority in other jurisdictions.  *Id*. at 722-23.  In that circumstance, giving greater weight to the Virginia case makes sense.  The court went on, though, to

misconstrue Virginia law when it asserted that the Supreme Court of Virginia's "refusal to hear the appeal lends considerable weight to [the decision's] persuasive value." *Id*. at 723. The Supreme Court of Virginia, after outlining the many reasons it might issue its boilerplate language that it denies review because "the Court is of opinion there is no reversible error in the judgment," has plainly stated that "unless the grounds upon which the refusal is based is discernible from the four corners of the Court's order, the denial carries no precedential value." *Sheets v. Castle*, 263 Va. 407, 412 (2002).

Even if these cases were applicable here, though, there would be no error by the district court. Based on these precedents, Adamson only argues that the district court had to give the *Pounders* decision "some weight." AOB 14. That is exactly what the district court did. It reviewed and analyzed *Pounders*, and determined that *Pounders* would not outweigh the clear authority from the Supreme Court of Virginia on how it should analyze the issues. JA295.

Much of Adamson's argument rests on his demonstrably false narrative that there is no on-point authority in this case "and the district court did not point to any in its opinion." AOB 16. Notably, Adamson claims that the district court's opinion hinges on two "theories: (i) Columbia's purported need is of some significance in determining the boundaries of the undefined Easement; and (ii) reference on plat maps to an easement width of sixty feet somehow . . . manifests

- 29 -

some intention of the original grantors." AOB 10. The district court supported both of those "theories" with citations to on-point statutory and Virginia Supreme Court authority. With respect to the first "theory," the district court cited no fewer than four cases from the Supreme Court of Virginia that plainly state matters regarding dimensions of an easement are resolved by looking to the express object of the easement when the instrument granting the easement does not specify dimensions. JA290-91. And on the second "theory," the court cited Virginia Code § 8.01-389 when it raised the fact that the deed conveying Adamson's land to him incorporated a plat stating a 60-foot-wide easement. JA287. Thus, *Pounders* is not the only on-point authority, as Adamson claims. Rather, there is a long line of on-point authority from far more authoritative sources. And the district court's reliance on that on-point authority rather than giving controlling weight to *Pounders* was not error.

*Pounders* is an unpublished decision of a Virginia trial court, and no more. Adamson misrepresents Virginia law by suggesting that the Supreme Court of Virginia's denial of review somehow gives the decision greater weight. Rather, it is a state trial court decision that was given due consideration by the district court. In light of its conflict with on-point authority from the Supreme Court of Virginia, the district court correctly followed settled law and declined to give binding deference to the *Pounders* decision.

## II.    THE AGREEMENT IS A VALID CONVEYANCE OF A PROPERTY RIGHT.

To the extent Adamson attacks the district court's opinion as construing the agreement to be an invalid conveyance, the Court need not reach those arguments. Adamson did not state in either of his complaints or as an affirmative defense to Columbia's counterclaim, that the Conveyance, or any part of it, was invalid. Rather, Adamson recognized the Conveyance's validity, JA13, and only claimed that his interpretation of the Conveyance was the correct one, JA14.  And given the district court's correct finding that the easement is, and always was, 60 feet wide, the controversy in this case is resolved.  The district court's determination that the easement is now 60 feet wide "[e]ven if the original Agreement contemplated a forty foot easement" is, at most, an alternative ruling.  Thus, the ruling does not depend on the determination that the easement could be expanded, and the Court need not address this issue, because the district court did not enter a judgment ruling that the easement may be expanded in the future.  In any event, these arguments are waived for failure to raise them at the summary judgment stage, and they also fail on the merits.

### A.    Adamson Failed To Raise Certainty And The Rule Against Perpetuities In The District Court, Thus The Arguments Are Waived.

Adamson claims for the first time on appeal that interpreting the Conveyance to allow the Grantee to add pipelines, thereby expanding the

easement, violates a certainty principle and the rule against perpetuities. "In this circuit, '[i]ssues raised for the first time on appeal are generally not considered absent exceptional circumstances.'" *Holly Hill Farm Corp. v. U.S.*, 447 F.3d 258, 267-68 (4th Cir. 2006) (finding that appellant "had numerous opportunities" to raise below the issue presented on appeal, but failed to do so, and declining to find plain error that would permit the Court to "deviate from our general rule against considering issues raised for the first time on appeal." (citation omitted)); *see also U.S. v. Richards*, 646 F.2d 962, 963 (5th Cir. 1981) ("[A]bsent exceptional circumstances," appellate courts do "not consider issues raised for the first time on appeal"). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." *Holly Hill*, 447 F.3d at 267; *see also Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir. 1982) ("An issue not properly preserved for appeal will generally not be considered unless the issue is a purely legal one and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice.").

This Court diligently enforces waiver rules because it is unfair to the appellate court, the district court, and the opposing party for a litigant to pick and choose arguments to bring before the district court while holding others in reserve to argue at the appellate level if the first ones fail. *Kanai v. McHugh*, 638 F.3d

- 32 -

251, 258 (4th Cir. 2011) (issue of personal jurisdiction waived because it was not raised in the district court). These tactics deprive appellate courts of the benefit from evaluating the district court's analysis, which is derived from a more intimate knowledge of the case and familiarity with the facts. *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004). The rule against raising new arguments on appeal also protects the role of the district court by discouraging a litigant from treating it "as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents." *Cf. Handa v. Clark*, 401 F.3d 1129, 1132 (9th Cir. 2005) (party waived constitutional claim by only making a "passing reference" to it in the district court). Adamson has done just that.

Columbia has consistently argued that even if the original use was not 60 feet wide, it had the right, under the Conveyance, to utilize additional land for compensation. *E.g.*, Columbia's Mem. in Opp. to Adamson's Mot. For Summ. Judg., ECF No. 44 at 25 ("If the area of the Easement is fixed for the installation of a single line, then the express right to install additional lines is written out of the [Conveyance]."). Columbia presented competent evidence that if the original use was not 60 feet wide, it had at least become 60 feet. *E.g.*, JA237, 245, 256-57. In response to Columbia's motion for summary judgment, Adamson only briefly made a rhetorical pass at claiming that property rights must be definite. ECF No.

- 33 -

43 at 11.  He did not cite a single case to develop the proposition, apply it to the facts of this case, or provide any supporting argument.  With respect to the rule against perpetuities, Adamson did not even mention the rule.  Rather, Adamson only inappositely argued that the dimensions of an easement cannot be altered without the parties agreeing to alter them.  *Id.* at 14.  Because Adamson did not present his certainty and rule against perpetuities arguments to the district court, they are waived, and this Court should not consider them.

### B.    The Conveyance Is Sufficiently Certain Under Virginia Law.

The Conveyance is sufficiently certain to be a valid conveyance.  Indeed, Adamson's own authorities establish that the Conveyance is sufficiently certain.  In *Firebaugh v. Whitehead*, 263 Va. 398, 403 (2002), the Supreme Court of Virginia held that "[i]n a deed conveying land or an interest in land, the main object of the description 'is not in and of itself to identify the land sold . . . but to furnish the means of identification, and when this is done it is sufficient.'" (citation omitted).  The description does not have to be so specific as to render resort to extrinsic evidence unnecessary.  *Id.*  Thus, when a right of first refusal agreement did not state the metes and bounds of the land subject to the right, it was enough that "an expert in land surveying testified that the description in the agreement was sufficient to allow him to identify the subject property."  *Id.*

The wording of the Conveyance here, in conjunction with Virginia law, renders the parameters of the easement certain to the extent required by Virginia law:  the easement was 60 feet to begin with.  And while the Court does not need to rule on using space beyond the current 60 feet used within the easement, consistent with the district court's alternative analysis, the easement can be expanded to greater than 60 feet wide to the extent needed to lay new lines. *Buckles*, 134 Va. at 18, plainly establishes that an easement of unstated width must be construed as broad enough to accomplish the easement's object.  It is indisputable that the easement's object is to allow Columbia to lay necessary pipelines to serve its customers.  JA246.  Thus, space beyond the original 60 feet of the easement can be used to meet that object and the Conveyance remains sufficiently definite.

But just as in *Stephen Putney Shoe Co. v. Richmond, Fredericksburg and Potomac Ry. Co.*, 116 Va. 211 (1914), that available additional use is limited by the deed's language.  To the extent Columbia chooses to expand the easement beyond its original 60 feet, it must do so consistent with the Conveyance's language requiring that the additional line or lines to be laid "below cultivation, so that the Grantors may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate said line or lines."  JA246.  Thus, no ever-

expanding easement encompassing the entirety of the original Grantors' property, AOB 35, was ever possible.

Columbia is limited by a requirement that the land remain reasonably suitable for the original Grantors' purposes. By contrast, there was no suggestion in *City of Lynchburg v. Smith*, 166 Va. 364, 372 (1936)—cited by Adamson at AOB 36—that any such limitation applied to the easement at issue there. Indeed, the plain language of the grant in that case did not even allow laying additional lines—it lacked the very provision on which Columbia and the district court based the right to lay additional lines. *Id*. And the court recognized the right of the parties to contract for an easement allowing laying additional utility lines and contemplating "additional servitude" of land. *Id.* at 373. Adamson cites no authority suggesting that the easement here is not sufficiently definite to be a valid conveyance, and his own cases plainly establish that the parties can contract for an easement, like the one here, involving future use that goes beyond the grantee's immediate use.

## C.    The Conveyance Does Not Violate The Rule Against Perpetuities.

The rule against perpetuities also does not apply to limit Columbia's rights under the Conveyance. "The rule against perpetuities, which invalidates interests that *vest* too remotely, exists to further the public policy of preventing excessive restraints or limitations upon the alienation of real property." *Citgo Petroleum*

- 36 -

*Corp. v. Hopper*, 245 Va. 363, 365 (1993) (emphasis added). And it is well settled that the rule against perpetuities "has reference to the time within which the interest *vests* and is not concerned with the postponement of the enjoyment of such interest." *Thomas v. Bryant*, 185 Va. 845, 856 (1946) (emphasis added). In *Thomas*, a testator granted real property to five trustees to be elected by five churches, upon the death of his widow. *Id*. Because the trustees could possibly not be elected for more than 21 years and 10 months after the death of the widow, challengers to the conveyance claimed that it violated the rule against perpetuities. *Id*.

The Supreme Court of Virginia recognized, though, that the right to the property vested upon the death of the widow, and if the churches chose to enjoy the right later, by waiting to elect trustees, that would not render the conveyance invalid as against the rule against perpetuities. *Id.* at 857. Similarly, in *Painter v. Alexandria Water Co.*, 202 Va. 431, 435 (1961), a right of water overflow was accompanied by a "further right" of flowage on additional lands on, among other things, construction of a new dam. The Supreme Court of Virginia adopted the lower court's ruling that "giving to the grantee the further right of flowage was not a mere personal covenant but an interest in the land which vested immediately upon the execution and delivery of the instrument." *Id*. at 436 (internal marks omitted).

- 37 -

The right at issue here—the right to lay additional lines as reasonably needed by the Grantee—also vested immediately. The Grantee could have laid additional pipelines in 1958 or 1960 or 1970. And whether the Grantee—or its successor, Columbia—chose to exercise its vested right is irrelevant. The right existed at the moment the easement was conveyed, and the rule against perpetuities is inapplicable.

Like with Adamson's other arguments, he chooses to ignore the plain language of the conveyance stated in the instrument. But Virginia law is clear that the words of the conveyance control its interpretation. The Grantors provided a right of way for the purpose of providing gas service via pipelines running through the property. A neighbor's guess as to how much of that right of way the Grantee chose to enjoy 35 years after the Conveyance does not constitute evidence that the parties somehow intended to limit the Conveyance sufficient to send the issue to the jury, and the district court should be affirmed.

## CONCLUSION

For the foregoing reasons, Appellee Columbia Gas Transmission, LLC, respectfully requests that this Court affirm the judgment below.

Respectfully submitted,

/s/ Tillman J. Breckenridge

TILLMAN J. BRECKENRIDGE
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com

TRAVIS A. SABALEWSKI
ALISON R.W. TOEPP
REED SMITH LLP
901 East Byrd Street
Suite 1700
Richmond, VA  23219
804-344-3400

MICHAEL S. DINGMAN
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4323

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this Brief of Appellee is proportionately spaced and contains 8,923 words excluding parts of the document exempted by Rule 32(a)(7)(B)(iii).

/s/ Tillman J. Breckenridge
Tillman J. Breckenridge
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com
Counsel for Appellee

# CERTIFICATE OF SERVICE

I certify that on March 21, 2014, the Brief of Appellees was served on all

parties or their counsel of record through the CM/ECF system.

/s/ Tillman J. Breckenridge
Tillman J. Breckenridge
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com
Counsel for Appellee